OPINION
Defendant-appellant William Shepard appeals from his conviction and sentence, following a no-contest plea, for Driving Under the Influence. Shepard contends that the trial court erred by denying his motion to suppress. He contends that the evidence in the record failed to support the trial court's conclusion that field sobriety tests were conducted in strict accordance with the rules and regulations of the National Highway Traffic Safety Administration, and that when the field sobriety tests are excluded from consideration, the officer lacked probable cause to arrest him for DUI. We agree. Accordingly, the judgment of the trial court isReversed, and this cause is Remanded for further proceedings.
 I
At 10:25 p.m., one evening in late November, 2000, James Palmer, a 21-year veteran of the Piqua Police Department, while on patrol in a marked cruiser, saw a vehicle being driven by Shepard going 57 m.p.h. in a zone that was about to change from 25 m.p.h. to 35 m.p.h. Palmer turned around and followed Shepard, who continued to speed. Palmer turned on his overhead lights. Shepard stopped his vehicle, without incident, about half a block after the overhead lights had been turned on.
After the stop, Shepard got out of his vehicle. He acknowledged that he was probably speeding. Palmer noted nothing out of the ordinary when Shepard got out of his car. Palmer asked for Shepard's driver's license. Shepard initially gave Palmer a credit card, but then gave him his license.
Palmer noticed that Shepard's eyes were very bloodshot, but did not inquire concerning any possible reason for that fact. Palmer noticed a "moderate" odor of an alcoholic beverage. When asked whether he had been drinking, Shepard said that he had had about three beers that night.
Palmer then had Shepard perform four field sobriety tests on the pavement, behind the police cruiser. These included a head-tilt test, a horizontal gaze nystagmus test, a walk-and-turn test, and a one-leg stand test. Following these tests, Palmer arrested Shepard for DUI and took him to the police station, where Shepard submitted to a breath alcohol test.
Shepard moved to suppress evidence, contending, among other things, that "[t]he field sobriety exercises the arresting officer administered to the Defendant were. . . . not administered in strict compliance with the NHTSA standards thereby negating their results for consideration in probable cause consideration." In his motion to suppress, Shepard also alleged that there was no probable cause for his arrest.
The trial court conducted a hearing on the motion to suppress. Following a hearing, the trial court orally denied the motion, from the bench. Thereafter, Shepard pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Shepard appeals.
 II
Shepard's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED BY FAILING TO SUPPRESS ALL THE FIELD SOBRIETY TESTS SINCE THE STATE FAILED TO MEET ITS BURDEN OF PROOF ESTABLISHING THE STANDARDS AND GUIDELINES USED BY THE OFFICER AND THE TESTS WERE NOT ADMINISTERED IN STRICT COMPLIANCE WITH NHTSA STANDARDS.
Field sobriety tests, in order to be admissible in evidence, either in the case in chief, or in a hearing on a motion to suppress, must have been administered in strict compliance with standardized testing procedures. State v. Homan (2000), 89 Ohio St.3d 421, first paragraph of syllabus. The Ohio Supreme Court has clearly indicated that the applicable standardized test procedures are set forth in the DWI Detection Standardized Field Sobriety Testing Student Manual (2000), published by the National Highway Traffic Safety Administration of the United States Department of Transportation. Id.
The initial burden is upon the defendant to assert that field sobriety tests were not performed in strict compliance with NHTSA standards.State v. Rioux (December 14, 2001), Greene App. No. 2001-CA-26, unreported, pg. 9-10. In the case before us, Shepard did so allege in his motion to suppress.
The State argues, and the trial court agreed, that Officer Palmer's strict compliance with the NHTSA manual could be presumed from a silent record. We disagree.
The trial court found that Palmer had strictly complied with the NHTSA manual. However, we find nothing in the record to support that finding. Perhaps the trial court could have taken judicial notice of the manual, but neither party requested that the trial court do so. Palmer never testified that he was familiar with the NHTSA manual. He indicated that he was trained using a different manual in 1987.
The NHTSA manual is not in our record, and we have not been immediately successful in obtaining a copy from the law library that we use. With respect to the head-tilt, one-leg stand, and walk-and-turn tests, Shepard contends that the manual requires qualifying questions concerning the existence of physical infirmities, and that Palmer did not strictly comply with the manual by asking these questions. As the State notes, the record reflects that Palmer was unable to recall whether he asked those questions. The State argues, and the trial court concluded, that on this record it could be presumed that Officer Palmer asked the qualifying questions. We disagree. There is no evidence that Palmer asked those questions. He simply could not recall whether he had asked them. Once Shepard asserted, in his motion to suppress, that the arresting police officer had failed to comply strictly with the manual, it was the State's burden to establish that the officer did strictly comply with the manual. A burden of proof cannot be satisfied from a silent record.
With respect to the horizontal gaze nystagmus test, Shepard contends that Palmer misread the test. Shepard contends that the parts of the test that Palmer concluded Shepard had failed properly involve looking for an involuntary jerking of the eyes from side to side, not "bumpy," as in up and down. The record does reflect that Palmer observed Shepard's eyes bumping up and down as he followed Palmer's finger. Since we do not have the manual, we cannot presently determine whether Shepard is correct in describing the clues that Palmer was supposed to look for. We note, however, that the State, in its brief, does not challenge Shepard in this regard.Essentially, the State argues that it was Shepard's burden to establish that the testing was not done in strict compliance with the NHTSA manual. We disagree. As we understand the holding in State v.Homan, supra, it is the State's burden to establish that those tests were performed in strict compliance with the manual. The evidence in this record is not sufficient to support the trial court's finding that Palmer performed the tests in strict compliance with the manual.
Shepard's First Assignment of Error is sustained.
 III
Shepard's Second Assignment of Error is as follows:
 THE TRIAL COURT ERRED BY FAILING TO SUPPRESS ALL EVIDENCE OBTAINED BY THE POLICE WHEN THE MANIFEST WEIGHT OF EVIDENCE SHOWED THERE WAS A LACK OF PROBABLE CAUSE TO ARREST THE APPELLANT FOR R.C. 4511.19.
The State contends that even before the field sobriety tests were performed, Palmer possessed probable cause to arrest Shepard for DUI. In the first case that the State cites for this proposition,Village of Chagrin Falls v. DeGreen (September 13, 2001), Cuyahoga App. No. 78741, the court noted that the appellant had failed to provide a complete transcript. In the absence of a complete transcript, the court of appeals was required to presume that the evidence in the record would support a finding of probable cause. In the case before us, we have a complete transcript of the suppression hearing.
In the next case cited by the State, State v. Rioux, supra, the arresting officer observed the suspect crossing the center line five separate times, by two to three feet, crossing over the white shoulder line on two occasions by two to three feet, and fluctuating in her speed between 58 to 72 m.p.h. The suspect in that case, when stopped, stopped her vehicle in the traveled portion of the roadway instead of pulling off onto the shoulder. Besides noticing an odor of alcohol on the suspect's breath, the arresting officer observed that the suspect's speech was slurred, and that she had a distant look in her eyes, as if she was having trouble focusing. Additionally, the suspect failed three field sobriety tests, the propriety of which had not been challenged in the motion to suppress.
We have no difficulty in distinguishing Rioux. In the case before us, without the results of the field sobriety tests, there remains only the fact that Shepard was speeding, which, unfortunately, is not an unusual occurrence, the fact that Palmer detected a "moderate" odor of alcohol, the fact that Shepard's eyes were bloodshot, the fact that Shepard admitted to having consumed about three beers, and the fact that he initially produced a credit card, before correctly producing his driver's license. On the other hand, Palmer observed nothing irregular about Shepard's driving other than his speeding; Palmer observed nothing unusual about Shepard's exiting his vehicle; and Palmer observed nothing unusual about Shepard's walking, apart from his performance on the excluded field sobriety tests. Furthermore, Palmer noticed nothing unusual in Shepard's speech.
The only other factor that Palmer said he considered was the fact that Shepard was initially upset with Palmer for having stopped him for DUI, but later, in response to some levity on Palmer's part, became friendly. Palmer described this as a mood change suggestive of being under the influence. However, this was the only mood change that Palmer described. It was in response to Palmer's admitted attempt to "break the ice," which evidently worked. Furthermore, a sober, rational person in Shepard's position could be expected to come to the realization that being upset at the stopping police officer was not likely to help, and that it might be better to adopt a more friendly approach.
In short, we conclude that this case is similar to State v. Spillers
(March 24, 2000), Darke App. No. 1504, unreported, in which we found that four marked lane violations, a moderate odor of alcohol, and an admission of consuming "a couple of beers," were insufficient to establish probable cause for an arrest for DUI.
Shepard's Second Assignment of Error is sustained.
 IV
Both of Shepard's assignments of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
WOLFF, P.J., and GRADY, J., concur.